

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

| | |
|---|---|
| AFTER HOURS FORMALWEAR, INC., | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) 06 C 2460 |
| v. | )<br>) Judge Ronald A. Guzmán |
| TUXEDOS, INC., doing business as FORMALLY MODERN TUXEDO, and JOANN AMBRIZ, BRIAN SCHELLHASE and MARY MASTENBROOK, individually, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff has sued defendants for trademark infringement and unfair competition. Defendant Tuxedos, Inc. ("defendant") has countersued plaintiff for tortious interference with contract and prospective economic advantage, violating the federal and state antitrust acts, and a declaration that plaintiff has abandoned the Modern Tuxedo trademark. The case is before the Court on plaintiff's Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss Counts I, II, IV an V of defendant's counterclaim. For the reasons set forth below, the motion is denied.

### Background

Plaintiff is the largest operator of men's formalwear stores in the Chicago area and has at least fifty percent of the formalwear market in the area. (Countercl. ¶ 7.) Defendant also sells and rents formal wear in the Chicago area. (*Id.* ¶ 2.)

On June 30, 2003, plaintiff acquired the formalwear business of a group of companies that operated under the name Modern Tuxedo. (*Id.* ¶ 5.) Sometime in 2005, plaintiff finished

converting the Modern Tuxedo stores to its After Hours brand and stopped using the name Modern Tuxedo. (*Id.* ¶ 10.)

When plaintiff stopped using Modern Tuxedo commercially, defendant began using Formally Modern Tuxedo as the name for its stores. (*Id.* ¶ 11.) Thereafter, plaintiff began taking steps to drive defendant out of business, including: (1) pressing baseless claims of trademark infringement; (2) telling one of defendant's vendors not to allow defendant to attend the vendor's trade show because plaintiff's lawsuit would soon put defendant out of business, a move that prompted the vendor to demand that defendant prepay the trade show fees; (3) telling another of defendant's vendors that plaintiff's lawsuit would soon force it out of business, which caused the vendor to change its payment terms with defendant from payment due ninety days after shipment to payment COD; and (4) commenting in front of defendant's potential customers that defendant had acted improperly and plaintiff's lawsuit would force it to change its name. (*Id.* ¶¶ 12-16.) Moreover, defendant alleges that plaintiff has taken similar actions against its other competitors, most of whom operate only one store, in an effort to attain a monopoly on the formalwear market in the Chicago area. (*Id.* ¶¶ 7, 17-20.)

### The Legal Standard

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the counterclaim, drawing all reasonable inferences in the defendant's favor. *See Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

2

## Discussion

In Count I of its counterclaim, defendant asserts a claim of tortious interference with contract, which requires allegations that: (1) defendant had a valid and enforceable contract with another; (2) plaintiff knew about the contract; (3) plaintiff intentionally and successfully induced the other party to breach the contract; and (4) defendant was damaged as a result. *Douglas Theater Corp. v. Chi. Title & Trust Co.*, 681 N.E.2d 564, 567 (Ill. App. Ct. 1997). Plaintiff contends that the third element is missing.

The Court disagrees. Defendant has not pleaded facts that prove plaintiff successfully induced a third party to breach its contract with defendant. But the Federal Rules of Civil Procedure do not require it to do so. *See Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir. 1995) ("[A]part from [Rule 9] and a tiny handful of arguably appropriate judicial supplements to it, a plaintiff in a suit in federal court need not plead facts; he can plead conclusions."). Certainly, defendant could have "plead[ed] [it]self out of court" by alleging facts that establish it has no claim. *Id.* But it did not do that either. As a result, defendant's allegation that it had "valid contractual relationships with vendors and customers, After Hours was aware of those contacts, and After Hours intentionally and unjustifiably induced the vendors and customers to terminate or unilaterally alter those contracts, all to [defendant's] damage" (Countercl. ¶ 23), is sufficient to state a claim for tortious interference.

In Count II, defendant asserts a claim for tortious interference with prospective economic advantage. Such a claim requires allegations that: (1) defendant had a reasonable expectation of entering into a business relationship; (2) plaintiff knew about that expectation; (3) plaintiff's deliberate interference prevented that expectation from becoming a reality; and (4) defendant was damaged as a result. *Douglas Theater*, 681 N.E.2d at 569. Plaintiff says this claim should

be dismissed because defendant has "fail[ed] to allege facts sufficient to establish these elements." (Pl.'s Mem. Law Supp. Mot. Dismiss at 4.) As noted above, however, defendant need not allege such facts. And, because the facts it has alleged do not negate the claim, defendant's allegation that it had "a reasonable expectation of entering into valid relationships with vendors and potential customers, After Hours knew or had reason to know of this expectancy, and After Hours purposefully interfered to prevent the expectancy from being fulfilled, all to [defendant's] damage" (Countercl. ¶ 25), is sufficient to defeat plaintiff's motion.

In Count IV, defendant alleges that plaintiff is attempting to monopolize the formalwear market in the Chicago area in violation of section two of the Sherman Act. Plaintiff's first argument is that defendant lacks statutory standing to pursue this claim. According to the statute, "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor." 15 U.S.C. § 15. However, injury, by itself, is not enough to confer standing. Rather, as the Supreme Court explained in *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*:

> Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation. It should, in short, be the type of loss that the claimed violations would be likely to cause.

429 U.S. 477, 489 (1977) (quotation omitted). Thus, when the alleged injury is caused by conduct that injures the market, *i.e.*, that decreases competition or increases prices, the injured party has standing to sue. *Id.* at 488. But when the alleged injury is caused by conduct that helps the market, *i.e.*, increases competition or decreases prices, the injured party has no standing. *Id.* at 488-89.

4

Defendant alleges that plaintiff takes a variety of steps to drive its competitors out of business. (Countercl. ¶¶ 12-19.) That conduct, defendant says, injures both it and plaintiff's other existing competitors, by frustrating their efforts to compete with plaintiff; any potential new competitors, by effectively precluding them from entering the market; and consumers, by depriving them of open-market competition. (*Id.* ¶¶ 17-18, 31-32.) Because defendant has alleged that its injury stems from conduct that harms consumers and the formalwear market as a whole, defendant has standing to pursue its Sherman Act claim.

To state a viable claim under that Act, defendant must allege "(1) specific intent to achieve monopoly power, (2) predatory or anticompetitive conduct directed to accomplishing this unlawful purpose, and . . . , (3) a dangerous probability that the attempt to monopolize will be successful." *Ind. Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1413 (7th Cir. 1989). Defendant's counterclaim states, or supports the inference, that: (1) After Hours is the largest operator of formalwear stores in the Chicago area and has at least half of that market (Countercl. ¶ 7); (2) After Hours has rapidly expanded its operations in the market by acquiring competing formalwear stores (*id.* ¶¶ 5, 8); (3) most of After Hours' competitors in the Chicago-area market operate only a single formalwear store (*id.* ¶ 7); (4) After Hours has the intent to achieve monopoly power in the Chicago-area market (*id.* ¶ 19); (5) After Hours has engaged in anticompetitive conduct to achieve this goal, including interfering with its competitors' existing and potential relationships with suppliers and customers, and pressing baseless trademark claims against defendant (*id.* ¶¶ 12-19); and (6) there is a dangerous probability that After Hours will achieve monopoly power because of: the size of its market share; the fact that its market share has been increasing and – given its strategy of purchasing competing stores – is likely to continue to do so; the leverage that market share gives After Hours over prices and practices of

the vendors that do business with the Chicago-are formalwear stores; After Hours is attempting to disrupt or destroy its competitors' existing and potential business relationships; and After Hours' conduct damages its competitors and prevents new competitors from entering the market (*id.* ¶¶ 5-8, 12-20).

Plaintiff says those allegations are insufficient because they describe actions directed to and harm suffered only by defendant, not consumers or competition in general. The Court disagrees. Though defendant alleges that plaintiff took steps to hurt or destroy its business, defendant also alleges that plaintiff took similar actions against its other competitors. (*See id.* ¶¶ 17-19.) In addition, defendant alleges that plaintiff's conduct harms consumers by limiting or destroying competition and giving plaintiff control over the prices charged for formalwear in the Chicago area. (*Id.* ¶¶ 17-19, 31-32.) At this stage, those allegations are sufficient to satisfy the competitive or consumer injury element of a section two claim.

Even if defendant has alleged that consumers will be injured, plaintiff says those allegations are insufficient because they are just "broad, conclusory assertions that . . . After Hours' actions [have] harmed . . . consumers." (Pl.'s Mem. Law Supp. Mot. Dismiss at 9.) Similarly, plaintiff contends that the "dangerous probability" allegation is infirm because defendant "makes this allegation only in the form of a conclusion, without pleading facts sufficient to properly identify the various competitive elements in the relevant market." (*Id.* at 10.) As the Seventh Circuit has said, however, there is no heightened pleading standard for Sherman Act claims: "[A]n antitrust plaintiff need not include the particulars of his claim to survive a motion to dismiss. It is instead sufficient for the plaintiff to include in its complaint only a short and plain statement of the claim showing an entitlement to relief." *MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.*, 62 F.3d 967, 976-77 (7th Cir. 1995) (quotations and

citations omitted); see *Tierney v. Vahle,* 304 F.3d 734, 742 (7th Cir. 2002) (stating that the only claims subject to a heightened pleading standard are those listed in Rule 9). Defendant's failure to put factual flesh on the bones of its allegations is not, therefore, a basis for dismissing this claim.

In the last count of its counterclaim, defendant alleges that plaintiff has violated Section 3(3) of the Illinois Antitrust Act. The parties agree that the elements of a viable state antitrust claim are the same as those of a federal antitrust claim. (*See* Pl.'s Mem. Law Supp. Mot. Dismiss at 13; Def.'s Resp. at 11.) Thus, for the reasons discussed above, plaintiff's motion to dismiss Count V of the counterclaim is also denied.

## Conclusion

For the reasons stated above, plaintiff's motion to dismiss Counts I, II, IV and V of defendant's counterclaim [doc. no. 39] is denied.

**SO ORDERED.**    ENTER: 1/29/07

**RONALD A. GUZMAN**
**United States District Judge**